1   PATRICK W. EMERY, ESQ., SB #061050
    ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
2   100 Stony Point Road, Suite 200 (95401)
    P.O. Box 1566
3   Santa Rosa, CA 95402-1566
    Telephone:     707-542-5050
4   Facsimile:     707-542-2589

5   BRETT EMISON, ESQ., *Pro Hac Vice*
    ADAM W. GRAVES, ESQ., *Pro Hac Vice*
6   PHYLLIS A. NORMAN, ESQ., *Pro Hac Vice*
    LANGDON & EMISON
7   911 Main Street
    P.O. Box 220
8   Lexington, MO 64067
    Telephone:     660-259-6175
9   Facsimile:     660-259-4571

10  ERIC L. DIRKS, ESQ., *Pro Hac Vice*
    WILLIAMS DIRKS, LLC
11  1100 Main Street, Suite 2600
    Kansas City, MO  64105
12  Telephone:     816-876-2600
    Facsimile:     816-221-8763

13
    ATTORNEYS FOR PLAINTIFF
14

15              **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17  THOMAS HAGEDORN, on behalf of          Case No. _____
    himself and all others similarly situated,
18                                          **CLASS ACTION**
            Plaintiff,
19                                          **COMPLAINT FOR RELIEF BASED ON:**
        v.
20
    NEST LABS, INC.,                        **(1)  VIOLATION OF CALIFORNIA
21                                               CONSUMERS LEGAL REMEDIES
            Defendant.                           ACT**
22
    _____/   **(2)  VIOLATION OF CALIFORNIA
23                                               UNFAIR COMPETITION LAW**

24                                          **DEMAND FOR JURY TRIAL**

25

26      Plaintiff Thomas Hagedorn, on behalf of himself and all others similarly situated, alleges

27  as follows:

28  ///

                                    -1-
                    CLASS ACTION COMPLAINT (260182.DOC)

## NATURE OF THE CASE

1.     Plaintiff brings this lawsuit because the Nest thermostat is defective.

2.     Defendant knew about the defect yet continued to market and sell its product to over one-million consumers in the United States.

3.     Plaintiff therefore brings this action on behalf of a proposed class of consumers who purchased the defective Nest thermostat nationwide.

## PARTIES

4.     Plaintiff Thomas Hagedorn is a citizen and resident of Parkville, Missouri.

5.     Defendant Nest Labs, Inc. ("Nest") is incorporated in Delaware with its principal place of business in Palo Alto, California.

6.     Defendant can be served through its registered agent at National Registered Agents, Inc., 818 West 7th Street, Los Angeles, California, 90017.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.     This Court has jurisdiction over Nest because Nest is registered to conduct business in California, has its principal place of business in California and engaged in its unlawful and unfair conduct from within California.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

10.     The majority of homes today have some form of "programmable" thermostat for the home's heating/cooling system.

11.     These "programmable" systems generally use a simple 4 wire system to control the heating/cooling/system and a disposable battery to power the display.

CLASS ACTION COMPLAINT (260182.DOC)

12.    The simple 4 wire system consists of:

     a.    A green wire to control the fan

     b.    A white wire to control the heat

     c.    A yellow wire to control the air conditioning and

     d.    An RH/RC wire which supplies power to the thermostat to control the AC/Heating units

13.    A modern trend in thermostats is the "smart" thermostat.  These thermostats allow a user to control their home heating and AC unit via a computer, tablet or smartphone.

14.    In order to control the units through a computer, tablet or smartphone, these "smart" thermostats are generally connected to the internet via the home's Wifi internet connection.

15.    These additional features require more power than a disposable battery and thus an alternative power supply is required.

16.    The industry standard "smart" thermostat utilizes a Common Wire or "C" wire to supply the additional power required to operate the smart thermostat.

17.    The "C" Wire runs from the heating/cooling unit and provides a direct power supply for the operation of the "smart" thermostat.

18.    The Nest thermostat is advertised and sold as an easy to use and simple to install thermostat that learns your schedule and programs itself.

19.    Nest represents that nearly anyone can easily install the Nest thermostat.

20.    Nest represents that "if you're comfortable installing a light fixture, you can install the Nest" and that the Nest can be installed within 15 minutes" and that "In fact, 99% of the people who installed Nest themselves would do it again."

21.    Nest's commercials make it look simple to install and to use.

22.    Nowhere does Nest suggest there is a problem with its power supply or that it will stop working at night. Instead, Nest represents that it will keep you comfortable at night.

23.    Nest represents that you only need to attach the wires that were attached to the original thermostat and that "no additional wires are required."

-3-
CLASS ACTION COMPLAINT (260182.DOC)

24.     The Nest is designed differently from the industry standard "Smart" thermostat which uses a "C" wire to charge the battery of the thermostat. The "C" wire is not easily installed by a layperson and so NEST designed its product for use without a "C" wire to make lay person installation easier.

25.     Without the use of the industry-standard "C" wire, Nest is left to draw its charge from the low voltage wires connected directly to the heating/AC unit. Such a charge can only be drawn when the heating or AC unit is running.

26.     But when the HVAC unit stops running (for example, when the weather is nice and neither the heat or A/C unit is running or when a customer leaves for vacation) the Nest battery quickly dies.

27.     In addition, the fluctuating power from the low voltage wires causes a short in the Nest baseplate.  In turn, this short can cause the Nest unit to turn the heating or AC unit in a permanent "on" position, meaning the heating or AC unit will remain running until the Nest unit, including its baseplate are removed from the wall and all wires are disconnected.

28.     This defect leads to the thermostat turning off the HVAC system or to the system running constantly.

29.     All Nest thermostats that are not connected to a C Wire will fail over time due to this defect.

30.     Nest Labs, Inc. knew that its thermostats were defective and were likely to fail. But instead of disclosing the problem, it concealed its knowledge from consumers and continued to sell its defective product.

31.     Nest estimates that it has sold its thermostat to over 1 million U.S. residents. That number continues to grow quickly.

32.     Nest has refused to repair or provide a refund for malfunctioning units to numerous purchasers, including Plaintiff.

33.     Plaintiff purchased his Nest thermostat in early January 2013 and installed the unit on or about January 23, 2013.

///

-4-
CLASS ACTION COMPLAINT (260182.DOC)

34.     On or about January 6, 2014, Plaintiff woke up because his thermostat stopped working in the middle of the night.

35.     Plaintiff contacted an HVAC specialist who told him that the battery to his Nest thermostat had died due to the fact that it was not connected to a "C" wire.

36.     Three of the pipes in Plaintiff's home froze and one broke due to the defect.

37.     On or about January 7, 2014, Plaintiff returned his Nest unit to Lowes and received a replacement unit.

38.     On the same day, Plaintiff installed the replacement nest unit, yet the replacement unit failed as well.

39.     Plaintiff attempted to contact Nest customer service about the malfunction on three occasions. Each time he was put on hold for an unreasonably long time period and was never able to connect with a customer service representative. Plaintiff also filed a complaint online.

40.     Despite his multiple attempts to contact customer service and to seek assistance, Nest has provided no assistance to Plaintiff.

41.     Numerous other individuals have had similar experiences.

42.     Nest refuses to tell its customers why their Nest thermostats are failing and that it is a result of a design defect.

43.     Nest Labs, Inc. has superior and exclusive knowledge of the design defect, and knew that the defect was not known or reasonably discoverable by Plaintiff and class members prior to their purchase of the Nest thermostat.

44.     Only Nest had access to information about the high failure rate of its thermostats. It knew this through its proprietary testing, customer service, warranty, replacement and sales data.

45.     The defect is a fact that would be considered material by a reasonable consumer deciding whether to purchase the Nest.

46.     Reasonable consumers, like Plaintiff, expect and assume that their thermostat will function. Plaintiff and class members further expect and assume that Nest will not sell a thermostat with a known defect.

47. Nest has concealed the defect from Plaintiff and other class members. When consumers have contacted Nest after noticing the defect, Nest has disclaimed knowledge of the problem. Even though numerous class members have contacted Nest to complain of the defect, Nest will not assist many of these individuals.

48. While Nest has the contact information of its consumers, it has not recalled or notified its consumers about the defect. Moreover, Nest has not offered to fix the problem, despite its alleged two-year warranty, leaving the customer to pay for the entire cost of the repair or replacement out of pocket.

49. And most recently, after numerous customer complaints, Nest continues to conceal the defect and mislead consumers by downplaying the problem on its website stating that a "small percentage" of units are malfunctioning, but that "your Nest Thermostat will continue to heat and cool your home as usual." This is patently false.

**CLASS ACTION ALLEGATIONS**

50. Nest has concealed the defect from Plaintiff and other class members. When consumers have contacted Nest after noticing the defect, Nest has disclaimed knowledge of the problem. Even though numerous class members have contacted Nest to complain of the defect, Nest will not assist many of these individuals.

51. While Nest has the contact information of its consumers, it has not recalled or notified its consumers about the defect. Moreover, Nest has not offered to fix the problem, leaving the customer to pay for the entire cost of the repair or replacement out of pocket.

52. Plaintiff brings this action on behalf of himself and a class of persons initially defined as follows: "All people who purchased or leased a Nest thermostat in the past two years."

53. Excluded from the Class are Nest; any affiliate, parent, or subsidiary of Nest; any entity in which Nest has a controlling interest, any officer, director, or employee of Nest; any successor or assign of Nest; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

54. This action has been brought and may properly be maintained on behalf of the class proposed above under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

55.     Numerosity.  Members of the class are so numerous that their individual joinder is impracticable. Nest has sold millions of its thermostats.

56.     Existence and predominance of common questions.  Common questions of law and fact exist as to all members of the class and predominate over questions affecting only individual class members. These common questions include the following:

       a.     Whether the Nest thermostats are defective;

       b.     Whether Nest knew of the defect;

       c.     How long Nest has known of the defect;

       d.     Whether Nest has a duty to disclose the defective nature of the thermostat to Plaintiff and Class members;

       e.     Whether Nest has violated the Consumers Legal Remedies Act, Civ. Code § 1750 et seq.;

       f.     Whether Nest has engaged in unlawful, unfair, or fraudulent business practices in violation of Business and Professions Code § 17200 et seq.;

       g.     Whether Nest is honoring its express warranty; and

       h.     Whether Plaintiff and the other class members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

57.     Typicality.  Plaintiff's claims are typical of the claims of the class, because, among other thing, Plaintiff purchased the same thermostat as all other Class Members.

58.     Adequacy.  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and product defect litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Plaintiff and his counsel.

59.     Superiority.  The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Nest economically feasible. Even if class members themselves could afford such

individualized litigation, the court system could not. In addition to the burden and expense of managing numerous actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

60.     In the alternative, the class may be certified because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Nest;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Nest has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,
Cal. Civ. Code. §§ 1750 *et seq.*)**

61.     Plaintiff, on behalf of herself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

62.     Nest is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and provided "goods" within the meaning of California Civil Code §§ 1761(b) and 1770.

63.     Plaintiff and members of the class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

64. As set forth herein, Nest's acts and practices, undertaken in transactions intended to result and which did result in the sale of Nest thermostats, violate Section 1770 of the Consumers Legal Remedies Act in that: (a) Nest represents that its goods have sponsorship, approval, characteristics, uses or benefits which they do not have; (b) Nest advertises its goods with intent not to sell them as advertised; (c) Nest represents that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and/or (d) Nest represents that its goods have been supplied in accordance with a previous representation when they have not.

65. The acts and practices engaged in by Nest that violate the Consumers Legal Remedies Act include failing to disclose, at the point of sale or otherwise, that the thermostat is defective.

66. Pursuant to the provision of California Civil Code § 1780, Plaintiff seeks an order enjoining Nest from the unlawful practices described herein, a declaration that Nest's conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**SECOND CAUSE OF ACTION**
**(For unlawful, unfair, and fraudulent business practices under**
**Business and Professions Code Section 17200 et seq.)**

67. Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

68. Nest's acts and practices, as alleged in this complaint, constitute unlawful, unfair and/or fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

69. The business practices engaged in by Nest that violate the Unfair Competition Law include failing to disclose, at the point of sale or otherwise, that the thermostat is defective, and refusing to recall or notify consumers about the defect.

70. Nest engaged in unlawful business practices by violating the Consumers Legal Remedies Act, Civil Code § 1750 et seq.

71. Nest engaged in unfair business practices by, among other things:

a. Engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and other members of the class;

1            b.       Engaging in conduct that is immoral, unethical, oppressive, unscrupulous,

2   or substantially injurious to Plaintiff and other members of the class; and

3            c.       Engaging in conduct that undermines or violates the stated policies

4   underlying the CLRA, which seeks to protect consumers against unfair and sharp business

5   practices and to promote a basic level of honesty and reliability in the marketplace.

6         72.    Nest engaged in fraudulent business practices by engaging in conduct that was and

7   is likely to deceive a reasonable consumer.

8         73.    As a direct and proximate result of Nest's unlawful, unfair and fraudulent business

9   practices as alleged herein, Plaintiff and Class members have suffered injury in fact and lost

10  money or property, in that they purchased the Nest thermostat they otherwise would not have,

11  paid more for the Nest thermostat than they otherwise would, paid for repairs and replacements,

12  and are left with thermostats of diminished value and utility because of the defect.  Meanwhile,

13  Nest has sold more thermostats than it otherwise could have and charged inflated prices, unjustly

14  enriching itself thereby.

15        74.    Plaintiff and Class members are entitled to equitable relief, including corrective

16  notice, restitutionary disgorgement of all profits accruing to Nest because of its unlawful, unfair

17  and fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a

18  permanent injunction enjoining Nest from its unlawful, unfair, fraudulent and deceitful activity.

19

20  **PRAYER**

21      WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for

22  judgment as follows:

23      a.    For an order certifying the Plaintiff Class and appointing Plaintiff and his counsel

24  to represent the Class;

25      b.    For an order awarding Plaintiff and the members of the Class restitution, or other

26  equitable relief as the Court deems proper;

27      c.    For an order enjoining Nest from continuing to engage in unlawful business

28  practices, as alleged herein;

1    d.    For a declaration that Nest's practices are unlawful and unfair and ordering
2    corrective notice to consumers;

3    e.    For an order awarding Plaintiff and the members of the Class pre-judgment and
4    post-judgment interest;

5    f.    For an order awarding Plaintiff and the members of the Class reasonable attorneys'
6    fees and costs of suit, including expert witness fees; and

7    g.    For an order awarding such other and further relief as this Court may deem just
8    and proper.

9                            **JURY TRIAL DEMANDED**

10    Plaintiff, by counsel, requests a trial by jury on his legal claims, as set forth herein.

11    DATED:  February 19, 2014.        Respectfully submitted,

12

13                    /s/ Patrick W. Emery
                      PATRICK W. EMERY, ESQ., SB #061050
14                    ABBEY, WEITZENBERG, WARREN & EMERY, P.C.

15                    BRETT EMISON, ESQ., *Pro Hac Vice* pending
                      ADAM W. GRAVES, ESQ., *Pro Hac Vice* pending
16                    PHYLLIS A. NORMAN, ESQ., *Pro Hac Vice* pending
                      LANGDON & EMISON
17
                      ERIC L. DIRKS, ESQ., *Pro Hac Vice* pending
18                    WILLIAMS DIRKS, LLP

19                    ATTORNEYS FOR PLAINTIFF

20

21

22

23

24

25

26

27

28

-11-
CLASS ACTION COMPLAINT (260182.DOC)