| | |
|---|---|
| 1 | KEKER & VAN NEST LLP |
| | BENEDICT Y. HUR - # 224018 |
| 2 | bhur@kvn.com |
| | SIMONA A. AGNOLUCCI - # 246943 |
| 3 | sagnolucci@kvn.com |
| | 633 Battery Street |
| 4 | San Francisco, CA 94111-1809 |
| | Telephone: 415 391 5400 |
| 5 | Facsimile: 415 397 7188 |
| 6 | Attorneys for Defendant NEST LABS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HAGEDORN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEST LABS, INC.,<br><br>Defendant. | Case No. 3:14-cv-00755-VC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. RULE CIV. P. 12(B)(6) AND 9(B)**<br><br>Date: July 10, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>Complaint Filed: February 19, 2014 |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION

ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3))

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF MATERIAL FACTS AND ALLEGATIONS ..........................2

III. ARGUMENT...........................................................................................................5

    A. Legal Standard. .........................................................................................5

    B. Plaintiff's UCL and CLRA Claims Are Grounded in Fraud and Must Meet Rule 9(b)'s Heightened Pleading Standard. ............................................6

    C. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Adequately Plead Reliance and Causation and Therefore Lacks Standing. ....................................................................................................8

    D. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Plead Fraud With the Requisite Particularity. ........................10

        1. The statements Plaintiff complains of are non-actionable puffery. ............11

        2. Plaintiff failed to identify when, where or how the alleged misrepresentations were made. ................................................12

        3. Plaintiff failed to identify why the statements he complains of were false or misleading. ........................................................12

    E. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Adequately Plead Scienter...................................................14

IV. CONCLUSION.....................................................................................................15

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | **Page(s)** |

**Federal Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................................ 5, 13

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
  459 U.S. 519 (1983) ....................................................................................................... 5

*Baba v. Hewlett-Packard Co.*
  No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. 2010) ..................................... 8, 14

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................................ 5, 13

*Berenblat v. Apple, Inc.*
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ............................................................... 15

*Bly–Magee v. Cal*
  236 F.3d 1014 (9th Cir. 2001) ................................................................................ 5, 12

*Cullen v. Netflix, Inc.*
  No. 5-11-cv-01199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ........................ 9

*Edmunson v. Procter & Gamble Co.*
  No. 10-CV-2256-IEG (NLS), 2011 WL 1897625 (S.D. Cal. May 17, 2011) ............ 11

*Elias v. Hewlett-Packard Co.*
  903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................... 6, 11

*Haskins v. Symatec Corp.*
  No.13-CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 1, 2013) ........................... 9

*In re Apple In-App Purchase Litig.*
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) ........................................................................ 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................................... 9, 12

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) ............................................................................. *passim*

*Leon v. Cnty. of San Diego*
  115 F. Supp. 2d 1197 (S.D. Cal. 2000) ....................................................................... 10

*Neu v. Terminix Intern., Inc.*
  No. C 07-64272 CW, 2008 WL 2951390 at*3 (N.D. Cal. July 24, 2008) .................. 14

*Noll v. eBay, Inc.*
  282 F.R.D. 462 (N.D. Cal. 2012) ............................................................................. 7, 8

| | |
|---|---|
| *Oestreicher v. Alienware Corp.* 544 F. Supp. 2d 964 (N.D. Cal. 2008) | 11, 14 |
| *Pareto v. FDIC* 139 F.3d 696 (9th Cir. 1998) | 5 |
| *Pirozzi v. Apple, Inc.* 966 F. Supp. 2d 909 (N.D. Cal. 2013) | 8 |
| *Progressive W. Ins. Co. v. Dallo* No. 07CV1003 IEG (BLM), 2008 WL 413752 (S.D. Cal. Feb. 14, 2008) | 10 |
| *Salameh v. Tarsadia Hotel* 726 F.3d 1124 (9th Cir. 2013) | 5, 11, 12 |
| *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F.3d 777 (9th Cir. 2012) | 6, 7, 8, 9, 10 |
| *Steckman v. Hart Brewing, Inc.* 143 F.3d 1293 (9th Cir. 1998) | 10 |
| *Usher v. City of Los Angeles* 828 F.2d 556 (9th Cir. 1987) | 5 |
| *Vess v. Ciba-Geigy Corp.* 317 F.3d 1097 (9th Cir. 2003) | 6, 8, 12, 13, 14 |

**State Cases**

| | |
|---|---|
| *Perez v. Golden Empire Transit Dist.* 209 Cal. App. 4th 1228 (2012) | 10 |

**State Statutes**

| | |
|---|---|
| Cal. Bus. & Prof. Code § 17200 *et seq.* | 4, 6 |
| Cal. Civ. Code § 1770 *et seq.* | 4, 6 |

**Federal Rules**

| | |
|---|---|
| Federal Rule of Civil Procedure 8(a)(2) | 5 |
| Federal Rule of Civil Procedure 9(b) | *passim* |
| Federal Rule of Civil Procedure 12(b)(6) | 5 |

## NOTICE OF MOTION AND MOTION

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on July 10, 2014, at 1:30 p.m., or on such other date to be set by the Court, at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, in Courtroom 4, before the Honorable Vince Chhabria, Defendant Nest Labs, Inc. ("Nest") will and hereby does move the Court for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Amended Complaint in this action.

This motion is based on the Memorandum of Points and Authorities filed concurrently herewith, on all pleadings and papers on file or to be filed in the above-entitled action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

## ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

1. Whether the Complaint states a claim on which relief can be granted.
2. Whether Plaintiff has properly alleged reliance on Defendant's allegedly fraudulent conduct and/or whether Plaintiff has properly alleged that Defendant's allegedly fraudulent conduct was the immediate cause of his injury.
3. Whether Plaintiff has stated with the requisite particularity the facts and circumstances of Defendant's allegedly fraudulent conduct.
4. Whether Plaintiff has properly alleged scienter.

Dated: May 16, 2014

KEKER & VAN NEST LLP

By: */s/ Benedict Y. Hur*
BENEDICT Y. HUR
SIMONA A. AGNOLUCCI

Attorneys for Defendant
NEST LABS, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Nest Labs, Inc. ("Nest") submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint filed by Plaintiff Thomas Hagedorn on behalf of himself and all others similarly situated ("Hagedorn" or "Plaintiff").

## I.    INTRODUCTION

The Nest Learning Thermostat has transformed the public's assumptions about what a thermostat can do.  Unlike traditional thermostats, the Nest thermostat learns the temperature and usage patterns of a household and adjusts the temperature accordingly, thereby reducing the energy costs and environmental impact of unnecessary heating and cooling.  It also is designed to re-charge its battery by "sharing" power with the HVAC system when necessary.[1]  Nest has sold approximately one million units and was purchased by Google for $3.2 billion on February 7, 2014.

Less than two weeks later, Plaintiff Thomas Hagedorn filed this purported consumer class action alleging that Nest concealed that its power-sharing technology does not work.  Plaintiff claims that Nest knew of this defect but defrauded over one million consumers by representing that Nest is easy to use and install.  There are at least four reasons why Plaintiff's unsubstantiated assertions do not support his claims for violations of the California Unfair Competition Law and Consumer Legal Remedies Act:

***First***, noticeably absent from the Amended Complaint is the assertion that Plaintiff relied on *any* of Nest's alleged misrepresentations in purchasing his thermostat.  Plaintiff does not claim to have even read or heard the statements he complains of, let alone relied on them.  This defect is fatal to the Amended Complaint.  So too is Plaintiff's inability to plead causation, because the Amended Complaint unequivocally shows that the defect Plaintiff complains of could not possibly have caused his injuries.

***Second***, the alleged misrepresentations that Plaintiff identifies constitute un-actionable puffery about the ease of installation of the Nest Learning Thermostat that cannot form the basis of a fraud claim.

---

[1] "HVAC" stands for heating, ventilation and air conditioning.

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:14-cv-00755-VC

825384

***Third***, although Plaintiff's allegations sound in fraud and must comply with Rule 9(b), Plaintiff has utterly failed to identify when or in what context the statements were made. Nor can he coherently explain why any of the statements are false. His claims therefore fail for this independent reason.

***Fourth***, Plaintiff has not sufficiently alleged scienter as required to state a claim sounding in fraud. His conclusory averment that Nest knew its product was defective is insufficient to survive a motion to dismiss because Plaintiff does not allege that Nest's alleged knowledge pre-dated his purchase of the thermostat.

For all these reasons, the Amended Complaint should be dismissed.

## II. STATEMENT OF MATERIAL FACTS AND ALLEGATIONS[2]

The Nest Learning Thermostat ("Nest") is a "smart" thermostat that, among other things, allows users to control their home heating and air conditioning units from a computer, tablet, or smartphone. Dkt. 20 (Amended Complaint) at ¶13. Like other smart thermostats, Nest connects to the Internet via the user's home wireless Internet connection. *Id.* ¶14. Due to their many features, smart thermostats generally require more power than a disposable battery can provide, and therefore draw their power from a wire called the Common Wire or "C Wire." *Id.* ¶¶15-16. The C Wire runs from a home's furnace to the thermostat and provides a direct power supply for operation of the smart thermostat. *Id.* ¶17.

Many homes are not equipped with C Wires, and the C Wire is not easily installed by the average layperson. *Id.* ¶24. Nest therefore developed and patented technology that allows its thermostat to run without being connected to a user's C Wire. *Id.* ¶¶24-25. The Nest was, and is, the only thermostat of its kind. To date, Nest has sold its thermostat to over 1 million U.S. residents. *Id.* ¶31.

Plaintiff purchased a Nest thermostat in early January 2013 and installed the unit in his home on or about January 23, 2013. *Id.* ¶33. His thermostat appears to have worked without incident for approximately one year. Around January 6, 2014, Plaintiff woke up because his

---

[2] Nest assumes the truth of all well-pleaded allegations for purposes of this Motion to Dismiss.

2
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:14-cv-00755-VC

825384

thermostat stopped working in the middle of the night. *Id.* ¶34. He contacted an unnamed "HVAC specialist" who told him that the battery to his Nest thermostat failed because it was not connected to a C Wire. *Id.* ¶35. Plaintiff does not allege that the "HVAC specialist" visited his home or examined his furnace and thermostat to determine the cause of failure, or that the individual has any understanding of Nest's patented technology.

Plaintiff returned his Nest to Lowe's, a national hardware store chain, and received a replacement unit, which "also failed," though Plaintiff does not allege when or why the replacement unit failed. *Id.* ¶37-38. Plaintiff states that he "attempted" to contact Nest customer service but "was never able to connect with a customer service representative." *Id.* ¶39. (Plaintiff's original Complaint indicates that Plaintiff declined to remain on hold to speak with a customer service representative. Dkt. 1 (Complaint) ¶39.)

Plaintiff alleges that the Nest is defective because, unlike other smart thermostats that draw their charge from a C Wire, Nest "is left to draw its charge from the low voltage wires connected directly to the heating/AC unit." Dkt. 20 ¶25. According to Plaintiff, this design "defect" causes one of two problems. First, Nest's "charge can only be drawn when the heating or AC unit is running," but when the HVAC stops running (for example, in warm weather, or when a customer leaves for vacation), the Nest battery "quickly dies." *Id.* ¶25-26. Second, "the fluctuating power from the low voltage wires causes a short in the Nest baseplate. This short can cause the Nest unit to turn the heating or AC unit in [sic] a permanent 'on' position," meaning the heating or AC will remain running until the Nest is removed from the user's wall. *Id.* ¶27. Notably, Plaintiff does *not* assert that either of these alleged problems caused his thermostat to fail.[3]

Plaintiff alleges that as a result of the above problems, all Nest thermostats that are not connected to a C Wire will fail over an unspecified period of time. *Id.* ¶29. He asserts that Nest

---

[3] Nor could he. Plaintiff alleges his thermostat failed while it was running in the middle of the night (*id.* ¶34), thereby precluding Plaintiff's first defectiveness theory, which requires the HVAC to be off at the time of failure. Plaintiff also asserts that his thermostat stopped working (*i.e.*, turned off) after it malfunctioned, thereby precluding his second defectiveness theory, which describes a defect that causes Nest to remain in a permanent "on" position.

825384

knew that its thermostats were defective and likely to fail and concealed its knowledge from consumers, advertising its thermostat as an "easy to use" and "simple to install" product that does not require "additional wires" to attach to the user's wall and that keeps the user comfortable at night. *Id.* ¶¶18-23, 30, 43, 44, 47, 49. Specifically, Plaintiff asserts that the following statements and/or advertisements are misleading:

- "The Nest thermostat is advertised and sold as an easy to use and simple to install thermostat that learns the user's schedule and programs itself." *Id.* at ¶18.
- "Nest represents that nearly anyone can easily install the Nest thermostat." *Id.* at ¶19.
- "Nest represents that 'if you're comfortable installing a light fixture, you can install the Nest' and that the Nest 'can be installed within 15 minutes' and that 'In fact, 99% of the people who installed Nest would themselves do it again." *Id.* at ¶20.
- "Nest's commercials make it look simple to install and use." *Id.* at ¶21.
- "Nowhere does Nest suggest there is a problem with power supply or that it will stop working at night. Instead, Nest represents that it will keep you comfortable at night." *Id.* at ¶22.
- "Nest represents that you only need to attach the wires that were attached to the original thermostat and that 'no additional wires are required.'" *Id.* at ¶23.

Plaintiff does not identify when or where Nest made these statements or that he even saw or heard them.

On February 19, 2014, Plaintiff Thomas Hagedorn filed a Complaint against Defendant Nest Labs., Inc.[4] for violations of the California Legal Remedies Act (CLRA), Cal. Civ. Code § 1770 *et seq.*, and the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* Dkt. 1. He amended his Complaint on March 28, 2014. Dkt. 20. Defendant Nest now files this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

---

[4] Less than two weeks before the Complaint was filed, Google Inc. acquired 100 percent of the stock of Nest Labs, Inc.

825384

# III. ARGUMENT

## A. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a Complaint for failure to state a claim upon which relief can be granted. When analyzing a motion brought under Rule 12(b)(6), the Court presumes the facts alleged in the complaint are true. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). That said, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead facts showing that his "right to relief [rises] above the speculative level" (*id.* at 555) and must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept material *factual* allegations as true, pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations . . . and unwarranted inferences" are insufficient). In reviewing a motion to dismiss, the Court may not assume that a plaintiff can prove facts not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a party's pleading to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," fraud claims are subject to a heightened pleading standard. Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. Cal*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted). To meet this standard, a plaintiff's complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted); *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud

5

825384

(even if the word 'fraud' is not used)". *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted). To determine whether state-law causes of action are subject to the heightened pleading requirements of Rule 9(b), federal courts look to state law. *Id.* at 1127; *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003).

The CLRA prohibits (1) unfair methods of competition and unfair or deceptive acts of practices; (2) in a transaction; (3) intended to result in (or resulting in) the sale or lease of goods; (4) to a consumer. Cal. Civ. Code § 1770. The statute requires that the plaintiff have suffered damages as a result of the method, act or practice. *Id.* § 1780(a). The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. It is well-settled that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *See, e.g., Kearns*, 567 F.3d at 1125. Where the plaintiff in a UCL or CLRA case "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim, . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-04. Where, on the other hand, the plaintiff alleges "some fraudulent and some non-fraudulent conduct, . . . only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104. Plaintiffs alleging fraud under the UCL and CLRA must prove "actual reliance on the allegedly deceptive or misleading statements" and that "the misrepresentation was an immediate cause of [plaintiff's] injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.,* 697 F.3d 777, 793-94 (9th Cir. 2012).

**B.    Plaintiff's UCL and CLRA Claims Are Grounded in Fraud and Must Meet Rule 9(b)'s Heightened Pleading Standard.[5]**

The gravamen of Plaintiff's Amended Complaint is that Nest "knew that its thermostats were defective and were likely to fail. But instead of disclosing the problem, it concealed its

---

[5] Because 9(b) applies equally to Plaintiff's UCL and CLRA claims, and because "courts often analyze these . . . statutes together" due to the overlapping legal issues presented, Defendant analyzes the claims together here. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).

knowledge from customers and continued to sell its defective product." Dkt 20 ¶30. Plaintiff's characterizations of Nest's alleged misconduct are *all* based on the theory that Nest concealed information from customers and or/mislead customers regarding a defect in the Nest thermostat's design, and therefore sound in fraud:

- "Nest refuses to tell its customers why their Nest thermostats are failing and that it is the result of a design defect." *Id.* ¶42.
- "Nest Labs, Inc. has superior and exclusive knowledge of the design defect, and knew that the defect was not known or reasonably discoverable by Plaintiff and class members prior to their purchase of the Nest thermostat." *Id.* ¶43.
- "Only Nest had access to information about the high failure rate of its thermostats. It knew this through its proprietary testing, customer service, warranty, replacement and sales data." *Id.* ¶44.
- "Nest has concealed the defect from Plaintiff and other class members. When consumers have contacted Nest after noticing the defect, Nest has disclaimed knowledge of the problem." *Id.* ¶47.
- "And most recently, after numerous customer complaints, Nest continues to conceal the defect and mislead consumers by downplaying the problem on its website stating that a 'small percentage' of units are malfunctioning, but that 'your Nest thermostat will continue to heat and cool your home as usual.' This is false." *Id.* ¶49.

Read as a whole, the Amended Complaint alleges that Nest knew its thermostats would fail because of alleged defects, but concealed these defects from customers, misled customers and/or made misrepresentations to customers. These are classic examples of fraud claims subject to Rule 9(b)'s heightened pleading standards. *See, e.g., Sateriale,* 697 F.3d 777 (Rule 9(b) applied to plaintiff's UCL and CLRA claims where plaintiff alleged that cigarette sellers made "unfair and deceptive" representations that holders of Camel Cash certificates could redeem coupons for six months when seller had no intention to honor coupons); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012) (Rule 9(b) applied to UCL and CLRA claims where plaintiff

7

825384

alleged that Defendants made misrepresentations and omissions regarding fees charged to eBay sellers); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (Rule 9(b) applied to Plaintiff's allegations that Apple violated the CLRA and UCL when it promoted certain gaming apps as "free," when in fact the apps were embedded with a game currency that could be purchased without entering further passwords); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920-921(N.D. Cal. 2013) (Rule 9(b) applied to allegations that Apple made misrepresentations in advertisements).

Plaintiff does not allege any other type of misconduct in his Amended Complaint. Where, as here, Plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct" as the basis of his claim, the Complaint is "grounded in fraud," and Plaintiff's pleading of UCL and CLRA claims "as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-04; *Sateriale,* 697 F.3d at 793 (Plaintiff's UCL and CLRA claims "sound[ed] in fraud" and were subject to Rule 9(b)); *Noll*, 282 F.R.D. at 468 (Plaintiff's UCL and CLRA claims, which were based entirely on allegations of misrepresentations and omissions, were "grounded in fraud" and subject to Rule 9(b)); *Kearns*, 567 F.3d at 1126-27 (Plaintiff's UCL and CLRA claims alleging that Ford dealership "knowingly misrepresent[ed] to the public that [certified pre-owned] vehicles [are] safer and more reliable" were "grounded in fraud" and subject to Rule 9(b)).[6]

### C. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Adequately Plead Reliance and Causation and Therefore Lacks Standing.

Plaintiff does not assert that he saw or heard *any* of Nest's alleged misrepresentations, or that he relied on those statements (or any other statements made by Nest) in purchasing his

---

[6]Indeed, Plaintiff's UCL claim under the "unlawful" prong is based entirely on its CLRA claim and therefore fails for the same reasons as the CLRA claim. FAC ¶71. His claim under the "unfair" prong also relies on his CLRA claim, and to the extent it does not, Plaintiff does not identify any facts sufficient to support an independent theory of liability under the "unfair prong" because he merely recites the standard for determining unfairness. *Compare* Amended Complaint, Dkt. 20 ¶ 72(a)-(c) *with Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353 *8 (N.D. Cal. 2010) (holding it is insufficient to vaguely allege that "HP's conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated …. The gravity of HP's alleged wrongful conduct outweighs any purported benefits attributable to such conduct. The inadequacy of the FAC's pleading in this regard necessitates dismissal, with leave to amend, of plaintiffs' UCL 'unfairness' claim") (citations omitted).

thermostat. That is fatal to his claims. In order to have standing, Plaintiffs alleging fraud under the UCL and CLRA must prove "actual reliance on the allegedly deceptive or misleading statements" and that "the misrepresentation was an immediate cause of [plaintiff's] injury-producing conduct." *Sateriale*, 697 F.3d at 793-94 (dismissal of UCL and CLRA claims was proper where plaintiffs failed to allege reliance)*; Kearns*, 567 F.3d at 1126 (upholding dismissal of complaint where plaintiff failed to allege "when he was exposed to [the misrepresentations] or which ones he found material"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965, 969 (S.D. Cal. 2012) (to have standing in fraud-based claims under the UCL and CLRA, the named Class members must allege (1) "actual reliance" and (2) "that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim"). Courts apply this requirement stringently and have dismissed complaints where plaintiffs alleged reliance but only did so in a conclusory fashion. *Haskins v. Symatec Corp.*, No.13-CV-01834-JST, 2013 WL 6234610 at *4-5 (N.D. Cal. Dec. 1, 2013) (dismissing complaint where plaintiff generally stated that she was exposed to misrepresentations on Defendant's website but failed to identify specific advertisements she saw and relied on before making her purchase); *Cullen v. Netflix, Inc*., No. 5-11-cv-01199-EJD, 2013 WL 140103 at *4 (N.D. Cal. Jan. 10, 2013) (dismissing complaint where plaintiff's only statement regarding reliance was the "unsubstantiated assertion" that he maintained his Netflix subscription in reliance on defendant's misrepresentations).

Here, Plaintiff has not even attempted to make a bare-bones assertion that he was exposed to a single one of Nest's allegedly fraudulent statements, much less that these misstatements caused him to purchase the product.

Moreover, not only has Plaintiff failed to allege reliance, he has also failed to adequately allege another necessary element: causation. *See Sateriale*, 697 F.3d at 793-94. While Plaintiff makes the conclusory allegation that "the battery to his Nest thermostat had died due to the fact that it was not connected to a 'C' wire," he makes other allegations that foreclose this conclusion. Dkt. 20 ¶35. The Amended Complaint alleges that Nest's inability to function without a C Wire causes one of two problems. First, Plaintiff asserts that because Nest's "charge can only be

9

825384

drawn when the heating or AC unit is running," the Nest battery "quickly dies" *when HVAC is not running,* such as when the weather is nice and there is no need for heat or A/C. *Id.* ¶25-26. But Plaintiff's thermostat allegedly failed during a January night when it was so cold that Plaintiff's pipes froze (*id.* ¶36), meaning that it happened *while the HVAC was running. Id.* ¶34. Second, Plaintiff contends that "a short in the Nest baseplate" can force the Nest unit into a permanent *on* position. *Id.* ¶27. This could not have been the source of Plaintiff's thermostat malfunction either, because his thermostat allegedly stopped working and turned *off*. *Id*. ¶ 34-35. Accordingly, the defects that Plaintiff identifies could not, by his own description, have caused his injury. Because Plaintiff's conclusory allegations are contradicted—and indeed foreclosed—by Plaintiff's more specific factual assertions, the Amended Complaint must be dismissed for failure to plead causation. *See Progressive W. Ins. Co. v. Dallo*, No. 07CV1003 IEG (BLM), 2008 WL 413752 at *4 (S.D. Cal. Feb. 14, 2008) (general allegations failed to state a claim where they were "directly contradicted by other parts of the Counter-Complaint"); *Leon v. Cnty. of San Diego*, 115 F. Supp. 2d 1197, 1200 (S.D. Cal. 2000) ("the court does not have to accept as true conclusory allegations that contradict facts which may be judicially noticed or which are contradicted by documents referred to in the complaint"); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"); *Perez v. Golden Empire Transit Dist.*, 209 Cal. App. 4th 1228, 1236 (2012) ("specific allegations in a complaint control over an inconsistent general allegation").

### D. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Plead Fraud With the Requisite Particularity.

Plaintiff's Amended Complaint also must be dismissed because the generalized, subjective statements that he identifies as misrepresentations are nothing more than non-actionable puffery. Moreover, the Complaint's vague allegations leave Defendant and the Court to speculate as to "the who, what, when, where, and how" of Nest's alleged fraud. Nor does the Amended Complaint make any effort to articulate "what is false or misleading about the purportedly fraudulent statement[s] and why [they are] false" as required by Rule 9(b). *See*

*Salameh*, 726 F.3d at 1133; *Kearns*, 567 F.3d at 1123-1124. Plaintiff cannot evade meaningful adversarial testing by forcing Defendant into a guessing game regarding Defendant's alleged misrepresentations.

### 1. The statements Plaintiff complains of are non-actionable puffery.

The Amended Complaint should be dismissed under Rule 9(b) because the statements identified by Plaintiff are non-actionable puffery that cannot form the basis of a misrepresentation claim. "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Elias*, 903 F. Supp. 2d at 854-55 (dismissing UCL and CLRA claims because "[g]eneralized advertisements that a computer is 'ultra-reliable' or 'packed with power' say nothing about the specific characteristics or components of the computer"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing UCL claim because representations that laptops had "higher performance," "longer battery life," "richer multimedia experience," and "faster access to data" amounted to non-actionable statements as a matter of law); *Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG (NLS), 2011 WL 1897625, at *3-*4 (S.D. Cal. May 17, 2011) ("subjective representations related to product superiority are mere puffery and are not actionable under the UCL or CLRA"). Statements that Nest is "easy" or "simple" to install and use (Dkt. 20 ¶¶18, 21), that "nearly anyone can easily install the Nest thermostat" (*id.* ¶19), that "if you're comfortable installing a light fixture, you can install the Nest," that Nest "can be installed within 15 minutes" and that "99% of the people who installed Nest themselves would do it again" (*id.* ¶20) are precisely the type of subjective, vague assertions that are not actionable.[7] So too the representation that Nest "will keep you comfortable at night." *Id.* ¶22. Accordingly, Plaintiff has failed to identify specific, actionable misrepresentations as required by Rule 9(b).

---

[7] Nor does Plaintiff even allege that these statements are false. He makes no allegation whatsoever suggesting that Nest is harder to install than advertised.

825384

### 2. Plaintiff failed to identify when, where or how the alleged misrepresentations were made.

As discussed in Part III(B), *supra*, paragraphs 18-23 of the Amended Complaint describe a number of statements made by Nest relating to its thermostat. Plaintiff does not identify when *any* of the statements were made. Nor does he describe where and how the statements were made (for example, on product packaging, in print advertisements, on Nest's website), except that the statement in paragraph 21 vaguely refers to "Nest's commercials." Even if these statements were actionable (they are not) they fail to comply with Rule 9(b), and the Amended Complaint should be dismissed. *See Bly–Magee*, 236 F.3d at 1019 (Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong"); *Kearns*, 567 F.3d at 1126 (affirming dismissal of CLRA and UCL causes of action for failure to comply with Rule 9(b) where Plaintiff identified general statements made in television ads, in printed sales materials, and by salespeople, but did not specify what the ads specifically stated or when the statements were made).

### 3. Plaintiff failed to identify why the statements he complains of were false or misleading.

The Amended Complaint also fails to make a coherent showing as to "why the statement or omission complained of was false or misleading" as required by Rule 9(b). *In re Sony*, 903 F. Supp. 2d at 967; *Salameh*, 726 F.3d at 1133; *Vess*, 317 F.3d at 1106.

The alleged misrepresentations in paragraphs 18 through 21 relate to the ease of installation of Nest. Dkt. 20 ¶18 ("The Nest thermostat is advertised and sold as an easy to use and simple to install thermostat that learns the user's schedule and programs itself"); *id.* at ¶19 ("Nest represents that nearly anyone can easily install the Nest thermostat"); *id.* at ¶20 ("Nest represents that 'if you're comfortable installing a light fixture, you can install the Nest' and that the Nest 'can be installed within 15 minutes' and that 'In fact, 99% of the people who installed Nest would themselves do it again"); *id.* at ¶21 ("Nest's commercials make it look simple to install and use"). In addition to being in-actionable puffery, Plaintiff does not explicitly allege that these statements are false or misleading. He does not state that he or any other customer had

12
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:14-cv-00755-VC

825384

difficulty installing the Nest thermostat, or that the Nest thermostat took him more than 15 minutes to install. Accordingly, he has made no showing whatsoever that these statements are fraudulent, let alone explained *why* they are fraudulent.

Plaintiff also complains that "Nest represents that you only need to attach the wires that were attached to the original thermostat and that 'no additional wires are required.'" *Id.* at ¶23. A generous reading of Plaintiff's allegations is that because "[a]ll Nest thermostats that are not connected to a C Wire will fail over time" (*id.* at ¶29), it is false and misleading for Nest to state that "no additional wires" (*i.e.*, no C Wires) are required to install Nest. This assertion fails to meet 9(b)'s stringent requirements because it is conclusory and lacking in detail as to *why* the statement that "no additional wires are required" is false. For example, the Amended Complaint fails to explain (1) how a C Wire would remedy the problems Plaintiff complains of and why the problems he identifies are caused by a C Wire; and (2) why all Nest thermostats will fail over time. *See Bell Atl.*, 550 U.S. at 555 (plaintiff must plead facts showing that his "right to relief [rises] above the speculative level"); *Ashcroft*, 556 U.S. at 679 ("pleadings that … are no more than conclusions, are not entitled to the assumption of truth").

The Ninth Circuit has rejected allegations of fraud far more detailed than this one. In *Vess*, the Plaintiff alleged that the American Psychiatric Association (APA), drug manufacturers and a nonprofit advocacy group violated the UCL and CLRA by conspiring to increase sales of the prescription drug Ritalin. 317 F.3d at 1101. The Plaintiff alleged that the APA fraudulently included Attention Deficit Disorder ("ADD") in the Diagnostic and Statistical Manual even though the disease failed to meet the manual's own diagnostic criteria, "but he fail[ed] to indicate which criteria it failed to satisfy and how it failed to satisfy them." *Id.* at 1106-1107. Plaintiff also charged that the APA sought to conceal its fraud by improperly clustering testing data for ADD with testing data for other conditions, but the allegation was "unsupported by details, such as the names of those conditions." *Id.* All of these defects were found to be fatal to his complaint. *Id.*

Here, the entire Amended Complaint appears to be based on Plaintiff's conversation with an unnamed "HVAC specialist" who "told him" that his thermostat failed because it was not

13
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:14-cv-00755-VC

825384

connected to a C Wire. *Id.* at ¶35. Nowhere does Plaintiff allege when, how, or even if the "specialist" examined his or any other Nest thermostat. Nor is there any allegation whatsoever suggesting why *every* Nest will fail over time if it is not connected to a C Wire. In the absence of such allegations, it is impossible to construe Nest's statement that "no additional wires are required" as fraudulent.

### E. Plaintiff's UCL and CLRA Claims Must Be Dismissed Because He Has Failed To Adequately Plead Scienter.

Even if Plaintiff sufficiently pled "the circumstances constituting fraud" (Fed. R. Civ. Pro. 9(b)), as well as reliance and causation, the Amended Complaint fails for an independent reason: Plaintiff has not alleged facts sufficient to support his allegations that Nest knew of the alleged defect at the time the allegedly fraudulent statements were made. Knowledge of falsity, or scienter, is an element of fraud that must be pleaded in UCL and CLRA claims sounding in fraud. *See, e.g., Kearns,* 567 F.3d at 1126. In order to meet their burden, Plaintiffs must "set forth facts from which an inference of scienter could be drawn." *Oestreicher*, 544 F. Supp. 2d at 968. Plaintiff must plead "why Plaintiff believes the statements were knowingly false when made and how Plaintiff will prove that they were knowingly false when made." *Neu v. Terminix Intern., Inc.*, No. C 07-64272 CW, 2008 WL 2951390 at*3 (N.D. Cal. July 24, 2008). Plaintiff must also allege that Nest knew the misrepresentations were false at the time that he purchased the product. *Baba,* 2010 WL 2486353 at*7 (Plaintiff must allege that Defendant knew of the alleged defects at the time of purchase to support a claim for fraud Rule 9(b)).

Plaintiff has failed to do so. Plaintiff does not allege facts demonstrating how Nest knew that its thermostat needed a C Wire. Rather, he attempts to shoulder his burden with conclusory assertions that Nest had "superior and exclusive knowledge" of the thermostat's design defect and "had access to … the high failure rate of its thermostats" through "its proprietary testing, customer service, warranty, replacement and sales data." Dkt. 20 ¶¶43-44. Plaintiff also alleges that "most recently, after numerous customer complaints, Nest continues to conceal the defect and mislead customers." *Id.* ¶49. But these allegations do not raise a reasonable inference that Nest knew its thermostats were defective. First, Plaintiff does not allege any facts making it plausible

14
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:14-cv-00755-VC

825384

that Nest thermostats have "high failure rates" or what specific data makes it plausible that Nest knew its product needed a C Wire. Indeed, every claim could be a fraud claim if a plaintiff needed only to point generally to a defendant's "proprietary data." Second, allegations that some users have complained about a product—especially without even alleging that the customers complained about the need for a C Wire—fail to demonstrate that Nest knew of the alleged defect. *See, e.g., Berenblat v. Apple, Inc.*, 2010 WL 1460297 at *9 (N.D. Cal. Apr. 9, 2010) (complaints posted on Apple's consumer website, as well as the fact that Apple deleted a related customer discussion thread from its website, "merely establish[ed] that some consumers were complaining" and did not establish Apple's knowledge or intent to conceal).

Nor has Plaintiff alleged that the statements were false when made. Indeed, he neither alleges when the allegedly false statements were made (*see supra* Section III(D)(2)) or when Nest knew that they were false. Nor can he allege—as he must—that the statements were false at the time that he relied upon them. For all of these reasons, Plaintiff has failed to adequately plead scienter.

## IV.  CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court GRANT their Motion and DISMISS the Amended Complaint with prejudice.

Dated: May 16, 2014                                   KEKER & VAN NEST LLP

                                                By:   */s/ Benedict Y. Hur*
                                                      BENEDICT Y. HUR
                                                      SIMONA A. AGNOLUCCI

                                                      Attorneys for Defendant
                                                      NEST LABS, INC.

825384