KEKER & VAN NEST LLP
BENEDICT Y. HUR - # 224018
bhur@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant NEST LABS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HAGEDORN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEST LABS, INC.,<br><br>Defendant. | Case No. 3:14-cv-00755-VC<br><br>**RESPONSE TO MAY 30, 2014 ORDER RE: STRIKING NATIONWIDE CLASS ALLEGATIONS**<br><br>Judge: Hon. Vince Chhabria<br><br>Complaint Filed: February 19, 2014 |

## I. INTRODUCTION

This brief is filed in response to the Court's May 30, 2014 order regarding a) whether California law applies to Plaintiff's putative nationwide class, and b) if not, whether the Court has jurisdiction. As shown below, Plaintiff alleges only violations of California consumer protection statutes, neither of which can apply to a nationwide class under controlling Ninth Circuit precedent.

California laws carry a strong presumption against extraterritoriality. Plaintiff asserts claims under the California Unfair Competition Law ("UCL") and the Consumers Legal Remedies Act ("CLRA"). Application of these laws to non-residents is improper under California's conflict-of-law analysis because the California statutes at issue here differ in material respects from comparable consumer protection statutes in other states and because these different consumer protection laws express valid state interests that each state is entitled to enforce within its boundaries. No amount of discovery can change the material differences in the laws and the facts relevant to the conflict-of-law analysis, and the Court should strike the nationwide class allegations at this stage in the interests of judicial efficiency.

Once the Court strikes the nationwide class allegations, the entire action must be dismissed. Plaintiff is a Missouri resident who purchased his thermostat in Missouri. For the same reasons his nationwide class allegations fail, he cannot bring California statutory claims against Nest.

## II. ARGUMENT

### A. Plaintiff Cannot Establish a Nationwide Class.

As the Court has noted in recent orders and hearings, California's UCL and CLRA carry a strong presumption against extraterritoriality. *See, e.g., Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013). Under the "basic principle of federalism," each state may, as part of its police power, make its own "reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Under *Mazza v.*

*Am. Honda Motor Co.*,[1] in determining whether California law applies to this dispute, the Court must determine 1) if the laws applicable to the putative class members are materially different; 2) if differing policy goals are advanced by each potentially applicable law; and 3) which state's interest would be "more impaired" if another state's laws applied. 666 F3d 581, 590 (9th Cir. 2012). Under this test, California law cannot apply to this dispute unless (1) the consumer protection laws of the 50 states are materially the same; or (2) the consumer protection laws of the 50 states are materially different, but California's interests in applying its policy goals outweigh the interests of all other states. *See id.* at 596.

### 1. Consumer protection laws of the 50 states differ materially.

First, as *Mazza* painstakingly describes, the UCL and CLRA differ materially from other states' consumer protection laws in various ways. *Id.* at 591. For example, Missouri's Merchandising Practices Act—the consumer protection statute applicable in Plaintiff's state of domicile—has no reliance requirement, *Plubell v. Merck & Co.*, 289 S.W.3d 707, 713 (Mo. App. W.D. 2009), whereas California law does. *Mazza*, 666 F.3d at 591. Other states, such as Florida, New Jersey, and New York, also differ on whether and how the Plaintiff must prove reliance. *See, e.g., Egwuatu v. S. Lubes, Inc.*, 976 So.2d 50, 53 (Fla. App. 2008) (no reliance showing necessary); *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 122-23 (N.J. Super. Ct. App. Div. 2005) (requiring the plaintiff to show a "nexus between the alleged [misrepresentation] and his or her damages"); *Stutman v. Chem. Bank*, 95 N.Y. 2d 24, 29-30 (N.Y. 2000) (requiring the plaintiff to show that a deceptive practice was "likely to mislead a reasonable consumer").

---

[1] The facts in *Mazza* bear note, as they are remarkably similar to the facts in the current case. In *Mazza*, the plaintiff brought a putative class action under the UCL and the CLRA. The defendant, Honda, had significant California contacts because the company's headquarters were in California, the company conducted business in California, the advertising agency that produced the allegedly fraudulent misrepresentations was located in California, and one-fifth of the proposed class members were located in California. *Mazza*, 666 F.3d at 590. Notwithstanding these contacts, however, the Ninth Circuit refused to certify a nationwide class. The Court held that California's consumer protection laws differed materially from many class member states, and that although California has an interest in "protecting it[s] citizens and [ ]regulating Honda," California's interest in applying its laws to non-resident purchasers was more "attenuated" than the foreign states' interest. *Id.* at 593-94. The similarity between the case at bar and *Mazza*'s facts renders *Mazza*'s holding "not only relevant but controlling." *See Frezza v. Google Inc.*, No. 5:12-cv-00237-RMQ, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013).

844819

Moreover, under the UCL a plaintiff may recover only restitution and injunctive relief, Cal. Bus. & Prof. Code § 17203, while the CLRA permits the plaintiff to recover actual damages, an injunction, restitution, punitive damages, and "any other relief that the court deems proper." Cal. Civ. Code § 1780(a)(1)-(5). Remedies under other state consumer protection statutes vary according to the willfulness of the defendant's behavior. *See, e.g.*, Mich. Comp. Laws Ann. § 445.911(6) (limiting recovery to actual damages when the violation is a result of a bona fide error); N.J. Stat. Ann. § 56:8-19 (requiring treble damages and attorney's fees). [2]

*Mazza* held that these differences "are not trivial or wholly immaterial"; rather, they "will spell the difference between the success and failure" of the Plaintiff's claim. *Id.* These differences are material here too. Defendant's pending Motion to Dismiss addresses the question of reliance (Dkt. 30), and there can be no doubt that resolution of this case also will turn on whether Plaintiff has proven damages. Variation in statutes of limitations and differences in state law that permit (or prohibit) consumer class actions may prove dispositive to some class members' claims. Because state consumer protection statutes differ from each other in a multitude of ways, all of which matter in this particular case, Plaintiff's putative nationwide class—which sweeps across all 50 states—cannot stand under *Mazza*. *See Mazza*, 666 F.3d at 591, 596; *Frezza*, 2013 WL 1736788, at *6-8; *Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-CV-01142-SVW PLA, 2014 WL 718431, at *7-10 (C.D. Cal. Feb. 19, 2014); *Banks*, 2012 WL 8969415, at *1.

---

[2] Other material differences between state laws prohibit a nationwide class. Although the UCL and the CLRA allow class actions, many states' consumer protection laws do not. *See, e.g.*, Ala. Code § 8-19-10(f); Ga. Code Ann § 10-1-399(a) (limiting actions to those brought "individually"); La. Rev. Stat. Ann. § 51:1409(A). Furthermore, although the statute of limitations under the UCL is four years, Cal. Bus. & Prof. Code § 17208, and the statute of limitations under the CLRA is three years, Cal. Civ. Code § 1783, other states' consumer protection statutes of limitations range from one to six years. *See, e.g.*, Or. Rev. Stat. § 646.638(6) (one year from discovery of the deceptive practice); Va. Code Ann. § 59.1-204.1 (A) (two years); Md. Code Ann. Cts. & Jud. Proc. § 5-101 (three years); N.J. Stat. Ann. § 2A:14-1 (six years). These differences in statutes of limitations—notably, for purchasers in states with one- or two-year limitations—may bar some putative members' claims. Differences between statutes of limitations have been found material under *Mazza*. *See, e.g., Littlehale*, 2012 WL 5458400, at *1.

844819

### 2. Consumer protection statutes across the country advance legitimate state policy concerns.

Second, consumer protection laws of the 50 states express valid state interests that each state is entitled to enforce. Under a fundamental principle of federalism, every state has "an interest in having its law applied to its resident[s] . . ." *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). State legislatures may weigh interests such as "[m]aximizing consumer [protection]" against "business welfare" and "corporate liability," and come to different conclusions regarding the extent to which the state is willing, for example, to forgo consumer protection for additional business opportunities. *See Mazza*, 666 F.3d at 592; *see also McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 90-96 (2010). Decisions such as these, which weigh the liability of corporations and the protection of citizens, are "decision[s] properly to be made by the legislatures and courts of each state," as each state will experience most strongly the direct impact of this balancing decision. *Mazza*, 666 F.3d at 592.

These types of policy decisions are "squarely implicated" in this case. *See id.* at 593. California, Missouri, and the other states in the nation are entitled to make policy decisions about the protections afforded to both their citizens and their businesses. For example, by requiring reliance under the UCL and CLRA, California made a legitimate policy decision to provide more protection to corporations, while Missouri has made a different policy decision by not requiring reliance. Each of these policy decisions is a legitimate exercise of a state's police power, and no valid state interest should be "discount[ed] or not recognize[ed]" in the face of another state's consumer protection law. *See id.* at 592.

### 3. California's interest in applying its policies does not outweigh those of the other 49 states.

Third, California's interest in applying its laws does not outweigh the interests of the other states in which Nest purchasers viewed advertisements or purchased the thermostat. When weighing two states' interests, Courts have held that the "place of [ ]wrong" holds the

4
RESPONSE TO MAY 30, 2014 ORDER
Case No. 3:14-cv-00755-VC

844819

"predominant interest" in having its laws and policies applied.[3] *Id.* at 593; *see also Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (Cal. Ct. App. 1980) ("Indeed, with respect to regulating or affecting conduct within its borders, the place of wrong has the predominant interest."). Courts consider the "place of [ ] wrong" to be the "state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593-594. Here, Plaintiff's relevant "last events" must be the Nest advertisements[4] that Plaintiff viewed or heard in Missouri and Plaintiff's Nest purchase, which also occurred in Missouri. *See id.* (noting that the "last events necessary for liability" regarding a California company occurred outside of California because the events were the communication of advertisements to the putative class members and the class members' reliance upon those communications when purchasing vehicles). For putative class members who are non-residents and who purchased outside of the state, no "last events" occurred in California. Accordingly, the conduct giving rise to liability did not occur in-state, and California's interest in applying its consumer protection laws to non-resident plaintiffs is "attenuated" at best. *See id.* at 594. Under *Mazza*, California's consumer protection laws cannot apply to non-resident class members who purchased the Nest thermostat in foreign states. The consumer protection laws in each state in which the transactions occurred—not California's law—must apply. *See id.*

**B. This Court Can—and Should—Strike Class Allegations Now.**

Courts have struck class allegations at the pleadings stage where, as here, "it is clear from the pleadings that the class cannot be maintained." *Wilson*, 961 F. Supp. 2d at 1148; *see also Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) (striking nationwide class at the pleading stage under *Mazza* because "the matter is sufficiently obvious from the pleadings"); *Littlehale v. Hain Celestial Grp., Inc.*, No. C-11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012) (dismissing complaint with prejudice because "there are material differences in the state common law of California and

---

[3] A driving force behind CAFA was to counteract the "false federalism" rampant in state courts and to trust federal courts "not [to] attempt to apply the laws of one state to behaviors that occurred in other jurisdictions." S. Rep. 109-14, at 62 (2005).

[4] Defendant does not concede that Plaintiff relied upon the Nest advertisements received in Missouri when making his Nest thermostat purchase. Plaintiff's failure to properly allege reliance is the subject of Defendant's pending motion to dismiss. Dkt.30.

844819

Pennsylvania"); *Frezza*, 2013 WL 1736788, at *6 (noting that the *Mazza* conflict-of-laws analysis "applies generally and is instructive even when addressing a motion to dismiss"). Nationwide class allegations brought under the UCL and the CLRA are particularly suitable to be stricken during the pleading stage. *See Brandon Banks v. Nissan N. Am., Inc.*, No. C-11-2022 PJH, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012) (dismissing plaintiff's nationwide allegations at the pleading stage because the UCL and the CLRA are "inappropriate" for a nationwide class).

The sweeping nationwide class alleged here should be stricken at the pleadings stage because it implicates the materially different consumer protection laws of all 50 states. Nest thermostats are purchased and activated in homes in every state.[5] The Amended Complaint alleges a defect inherent in *all* Nest thermostats, and Plaintiff's purported class includes anyone who bought a Nest in the prior two years—in other words, residents of all 50 states. Compl. at 6 (alleging class of "[a]ll people who purchased or leased a Nest Thermostat in the past two years").[6] As explained in Part A, *supra*, the Ninth Circuit has held that California's consumer protection statutes differ materially from other consumer protection statutes across the country, thereby precluding broad nationwide classes such as the one alleged here. *Mazza*, 666 F.3d at 591.

The handful of cases in which courts have declined to strike UCL- and CLRA-based nationwide class allegations at the pleadings stage are distinguishable. In those cases, the defendant made *no* showing that nationwide classes should be stricken because of material differences in state laws. *Doe v. Successfulmatch.com*, No. 13-cv-03376-LHK, 2014 WL 1494347, at *7 (N.D. Cal. Apr. 16, 2014) (refusing to strike class claims at the pleading stage because "Defendant . . . provides no support for Defendant's position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Plaintiff's class claims"); *see also Brazil v. Dole Food Co.*, No. 12-cv-01831-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013) ("Defendants . . . provide no support whatsoever for

---

[5] Declaration of Scott Hong in Support of Response to Order Re: Striking Nationwide Class Allegations ("Hong Decl."), ¶ 4.

[6] To the extent that Plaintiff seeks to represent a class of plaintiffs who purchased the product online through Nest.com, those purchasers are subject to a contract that contains an arbitration provision and a class arbitration waiver. *See Sales Terms*, https://nest.com/legal/sales-terms/.

their position that foreign law, and not California law, governs Brazil's class claims"); *In re Clorox*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (refusing to dismiss the class claims at the pleading stage because the defendant "has not explained how differences in the various states' consumer protection laws would materially affect the adjudication of Plaintiff's claims or otherwise explained why foreign laws should apply"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012) ("[M]ore is needed for Apple to sustain its burden to show that those differences are material, that is, . . . they make a difference in this litigation") (quotations omitted). Here, however, Nest has made a showing that (1) Plaintiff's purported class sweeps across all 50 states; (2) the consumer protection laws of those 50 states differ in ways material to this dispute and (3) California's interests do not outweigh those of the other 49 states whose citizens purchased the Nest Thermostat.

Moreover, subclasses are not a manageable solution where, as here, the many state laws implicated differ so greatly. Management of the litigation subgroups implicated here would place a significant administrative burden on this Court. For example, the Court would need to decide multiple motions based on different state laws and manage competing jury instructions, among other burdens. *See Marsh v. First Bank of Del.*, No. 11-CV-05226-WHO, 2014 WL 2085199, at *7-8 (N.D. Cal. May 19, 2014) (refusing to certify multiple subclasses because "the problems and complexities raised by having to consider so many different laws" would impose an oppressive practical and administrative burden on the court and the jury); *Rodriguez v. Instagram, LLC*, No. C 12-06482 WHA, 2013 WL 3732883, at *3 (N.D. Cal. July 15, 2013) ("It is one thing to apply California law to adjudicate the claims of a California class . . . but quite another to . . . adjudicate the rights of the residents of the other 49 states. . . . When the claims are based on *state* law, as here, the law of fifty states is likely to apply . . . and it is unmanageable.") (emphasis in original); *In Re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").

Rule 23(C)(1) instructs courts to rule on class certification "[a]t an early practicable time" after the lawsuit is filed. Here, Plaintiff's class suffers from an inherent legal defect that no

844819

amount of factual development or discovery will cure. Accordingly, it is "practicable" and efficient for the Court to strike class allegations now. *See Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal 2008); Fed. R. Civ. P. 23(C)(1).

### C. The Court Should Dismiss the Case Because the Missouri Plaintiff Cannot Bring Claims Under California's Consumer Protection Statutes.

Plaintiff, who is a Missouri resident and who purchased his Nest thermostat in Missouri, seeks redress under the CLRA and UCL. As discussed above, the Ninth Circuit in *Mazza* has established that, even where the defendant has significant contacts with California, "each class member's consumer protection claim should be governed by the consumer protection laws of the *jurisdiction in which the transaction took place.*" 666 F.3d at 594 (emphasis added). Because Plaintiff has only pleaded California statutory claims—and because this Plaintiff cannot seek redress under those California laws for the reasons stated above—the entire Amended Complaint should be dismissed. *See Drawsand v. F.F. Props., L.L.P*, 866 F. Supp. 2d 1110, 1129 (N.D. Cal. 2011) (dismissing a complaint against all defendants because the court had struck all the causes of actions levied against them); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed" and the case should be dismissed) (internal quotations omitted); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (noting that dismissal may be based on "the lack of a cognizable legal theory").

### D. No California Choice of Law Provision Applies to Plaintiff's Allegations.

At the May 30, 2014 CMC conference, the Court asked whether any California choice of law provision applied to Plaintiff's allegations. The parties submitted a stipulation stating that no California choice of law provision conclusively applied (Dkt. 36), and based on the allegations of the Amended Complaint, it is apparent that none does.

There are four principal agreements that could apply to a purchase of a Nest Thermostat: (1) The Limited Warranty; (2) the Terms of Service; (3) the Sales Terms; and (4) the End User

License Agreement. Each of these agreements is available online. None of them provides an applicable choice of law provision for this case.

    **(1) Limited Warranty:** The Limited Warranty is included with each Nest purchase. (https://nest.com/legal/warranty/thermostat/). It does not include a choice of law provision.

    **(2) Terms of Conditions of Sale:** The Terms of Sale apply only to purchases made through the Nest online store. (https://nest.com/legal/sales-terms/). While that agreement does include a California choice of law provision (*Id.* at ¶18), it also contains a binding arbitration clause and a class arbitration waiver. (*Id.* at ¶9). Thus, any purchaser to whom the Terms of Sale applies could not—as a matter of law—be a part of Plaintiff's class.

    **(3) Terms of Service**: The Terms of Service apply to services and certain software accessible through Nest.com. (https://nest.com/legal/terms/). While it contains a California choice of law provision (*Id.* at ¶11), it also contains a binding arbitration clause with a class arbitration waiver. (*Id.* at ¶10). Thus, to the extent that it applies to Plaintiff's claims, the case should be sent to arbitration.

    **(4) End-User-License Agreement**: The End User License Agreement ("EULA") applies to certain software used with the Nest Thermostat. (https://nest.com/legal/eula/). It contains a California choice of law provision. (*Id.* at ¶13). As pleaded, Plaintiff's Amended Complaint alleges that the hardware has a design defect that causes its battery to drain and for the device to fail; Plaintiff does not allege that his harm was caused by the software in the Nest Thermostat. Nor could he. The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods...." Cal. Civ. Code § 1761(a). "California law is clear that software is not a tangible good or service for the purposes of the CLRA." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012); *Ferrington v. McAfee, Inc.*, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).

844819

## III. CONCLUSION

For the reasons stated above, Defendant respectfully requests that this Court strike nationwide class allegations and dismiss the action.

Dated: July 10, 2014

Respectfully submitted,

KEKER & VAN NEST LLP

By: */s/ Benedict Hur*
BENEDICT Y. HUR
SIMONA A. AGNOLUCCI

Attorneys for Defendant
NEST LABS, INC.

844819